# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LONNY ALLEN MAYER,

                Plaintiff,

v.

KEVIN A. CARR, DYLAN RADTKE, JOHN KIND, DAN CUSHING, GREEN BAY CORRECTIONAL INSTITUTION, GBCI STAFF, and WISCONSIN DEPARTMENT OF CORRECTIONS,

                Defendants.

Case No. 22-CV-1192-JPS

**ORDER**

      Plaintiff Lonny Allen Mayer, an inmate formerly confined at Green Bay Correctional Institution ("GBCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. Plaintiff filed an amended complaint on October 11, 2022. ECF No. 10. Plaintiff may file an amended pleading as a matter of course before service on the opposing party, *see* Fed. R. Civ. P. 15(a), and as such the Court will treat the amended complaint as the operative complaint.

      This Order resolves Plaintiff's motions for leave to proceed without prepaying the filing fee, to recruit counsel, for a preliminary injunction, to waive initial partial filing fee, for immediate relief, and to expedite, as well as screens Plaintiff's amended complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C.

§ 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On October 11, 2022, the Court ordered Plaintiff to pay an initial partial filing fee of $2.61. Plaintiff paid that fee on October 24, 2022. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. The Court will accordingly deny Plaintiff's second motion to proceed without prepayment of the filing fee, ECF No. 7, and motion to wait the initial partial filing fee, ECF No. 12, as moot. Plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. **SCREENING THE COMPLAINT**

2.1 **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

On April 26, 2022, Defendant Dan Cushing ("Cushing") directed and participated, if not initiated, in depriving Plaintiff of his right to use the telephone. *Id.* ECF No. 10 at 5. Cushing removed Plaintiff from General Population ("GP"), escorted him to the Restricted Housing Unit ("RHU"), and instructed staff that Plaintiff was not to be given the telephone for any reason. *Id.* GBCI immediately enforced this restriction and did not provide Plaintiff any due process. *Id.*

On May 10, 2022, after a series of complaints to Defendant Warden Dylan Radtke ("Radtke"), Defendant John Kind ("Kind"), the security director, created a policy that only applied to Plaintiff; the policy authorized

GBCI staff to deprive Plaintiff of his right to use the telephone. *Id.* Kind issued a written order formally authorizing and notifying Plaintiff that he would remain on "loss of phone" restriction until further notice. *Id.*

Plaintiff notified Radtke twelve times between April 26, 2022 and August 31, 2022 that he was being deprived of his constitutional rights to access the telephone. *Id.* at 6. Radtke took no action to fix the violation despite his duty to do so. *Id.* Plaintiff notified Defendant Kevin Carr multiple times from June 2022 to August 2022 that Plaintiff was being deprived of his constitutional rights to access the telephone. *Id.* at 7. Carr took no action to fix the violation despite his duty to do so. *Id.*

With the exception of a handful of isolated occurrences, GBCI security staff directly participated in the violation of Plaintiff's rights by intentionally skipping his cell when allowing inmates to use the telephone. *Id.* at 8. Plaintiff clarifies that the denial of telephone access for the period between September 6, 2022 and October 6, 2022 was the result of a conduct report, and was therefore lawful. *Id.* In contrast, Plaintiff maintains that he was illegally deprived of access to the telephone for all other times between April 26, 2022 and the filing of this case (a period in excess of 131 days). *Id.* at 8–9.

Plaintiff's damages include his inability to access the court system. *Id.* at 9. During the relevant time period, Plaintiff was defending against six criminal cases and prosecuting one civil matter. *Id.* Plaintiff alleges that the denial of telephone access during this time prevented him from gathering evidence to use in those cases. *Id.*

### 2.3 Analysis

First, Plaintiff may proceed against Cushing, Kind, Radtke, and Carr for a First Amendment claim. Prisoners have a First Amendment right to

Page 4 of 19
Case 2:22-cv-01192-JPS   Filed 08/02/23   Page 4 of 19   Document 17

communicate with others outside prison, but they do not have an unlimited right to telephone use. *See Thornburgh v. Abbott*, 490 U.S. 401, 109 (1989); *Boriboune v. Litscher*, 91 F. App'x 498, 499 (7th Cir. 2003). Under *Turner v. Safley*, 482 U.S. 78, 89 (1987), a prisoner's telephone access may be limited as long as the restriction is reasonably related to a legitimate penological interest. *Boriboune*, 91 F. App'x at 499. The Court of Appeals for the Seventh Circuit has suggested that district courts wait until summary judgment to determine whether there is a reasonable relationship between a restriction and a legitimate penological interest, because an assessment under *Turner* requires a district court to evaluate the state officials' reasons for the restriction. *See e.g., Lindell v. Frank*, 377 F.3d 655, 658 (7th Cir. 2004). Plaintiff alleges that Defendants knowingly prevented him from accessing the telephone for a time period in excess of 131 days. At the pleading stage, the Court finds Plaintiff's allegations sufficient to state a First Amendment claim against Cushing, Kind, Radtke, and Carr for interfering with Plaintiff's right to communicate with others outside prison.

Second, the Court finds that Plaintiff may proceed on a Six Amendment claim against Cushing, Kind, Radtke, and Carr for interfering with Plaintiff's right to counsel. Unreasonable restrictions that impede an inmate's ability to speak to his attorney can also violate the Constitution. *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995). For instance, "[t]he Sixth Amendment right to counsel would be implicated if plaintiff was not allowed to talk to his lawyer for [an] entire four-day period" following his arrest. *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991). Plaintiff alleges that Defendants knowingly interfered with his access to criminal counsel for six pending cases during a time period in excess of 131 days. At the pleading stage, the Court finds Plaintiff's allegations sufficient to state a

Sixth Amendment claim against Cushing, Kind, Radtke, and Carr for interfering with Plaintiff's right to counsel.

Third, the Court finds that Plaintiff may not proceed on an access to courts claim. Plaintiff alleges that Defendants' denial of telephone use prevented him access to the court. The Constitution guarantees prisoners a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). But because that right is to access the *courts* rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

The point of recognizing an access to the courts claim "is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury,* 536 U.S. 403, 414–15 (2002). The constitutional right of access to court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415; *see also Lewis,* 518 U.S. at 353 (plaintiff must identify a "nonfrivolous," "arguable" underlying claim). Accordingly, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415.

Here, Plaintiff's complaint does not meet the basic requirements for an access to courts claim. Although Plaintiff generally references that he was denied the ability to investigate his pending criminal and civil cases, the complaint does not provide any information about how Defendants' actions actually prejudiced a potentially meritorious claim. As such,

Plaintiff may not proceed on an access to courts claim. If Plaintiff wishes to proceed on an access to court claim, he must submit an amended complaint with more detailed information regarding his specific cases and the resulting injury.

Finally, the Court will dismiss Defendants GBCI Staff, Department of Corrections, and GBCI. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." *Johnson v. Supreme Court of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." *Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006). As such, the Court is obliged to dismiss the Wisconsin Department of Corrections and GBCI as defendants. Additionally, Plaintiff cannot proceed on a general claim against all GBCI staff. To the extent that Plaintiff wishes to proceed against GBCI staff, who he has yet to identify, but who were personally involved in depriving Plaintiff of access to a telephone, the Court will allow Plaintiff time to identify any such defendants through the course of discovery. The Court will provide a deadline in the scheduling order regarding the timing to identify any defendants unknown to Plaintiff at this time.

3.  **MOTION TO APPOINT COUNSEL**

The Court will deny Plaintiff's motion for the appointment of counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually

and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for the work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small

pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Additionally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain her own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected

criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff has some submitted evidence that he contacted attorneys to represent him in the matter. ECF No. 3. Plaintiff states in his motion that he sent three letters to attorneys seeking legal representation but does not include any responses. *Id.* The Court finds Plaintiff's efforts minimal at best as he has not shown evidence of contacting a civil rights attorney who may be able to take on his case. However, even assuming Plaintiff met the first prong, the Court would nonetheless deny the request based on the second prong as discussed below.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a

Page 10 of 19
Case 2:22-cv-01192-JPS    Filed 08/02/23    Page 10 of 19    Document 17

> lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced

phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998);

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. In his motion, Plaintiff indicates that his case is meritorious, that this case is too complex to proceed without counsel, and that there is a likelihood that Defendant will "sabotage" Plaintiff's participation in this case. ECF No. 3.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order.

Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. Additionally, the Court believes Plaintiff has the capacity to conduct discovery, which is the only task currently before him. The Court will therefore deny Plaintiff's motion, without prejudice, and if the case proceeds past summary judgment, the Court will reconsider any renewed motion for counsel at a later time.

Defendants have yet to be served in this matter and the Court has no independent basis to believe that they will "sabotage" Plaintiff's case. However, to the extent that Plaintiff later can demonstrate that Defendants are interfering with his ability to communicate to the Court or to investigate his claims, Plaintiff should notify the Court and the Court will address the issue as needed.

### 4. PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that: (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three factors, the court must balance the harm to each party and to the public interest from granting or denying the injunction. *See Wood*, 496 F.3d

at 622; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

In the context of prisoner litigation, the scope of a court's authority to issue an injunction (including a TRO) is circumscribed by the Prison Litigation Reform Act (PLRA). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer*, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The Court will deny Plaintiff's motion for a preliminary injunction and motion requesting immediate injunctive relief, ECF Nos. 4, 13, as moot. Plaintiff's preliminary injunction motion relates to his inability to access the telephone in the fall of 2022 at GBCI. However, Plaintiff is no longer incarcerated at GBCI. ECF No. 16. Because Plaintiff no longer is in the facility where the events of which he complained were occurring, he cannot demonstrate that he will suffer irreparable harm if the Court does not grant his request for preliminary injunctive relief. And generally, a prisoner's transfer from one prison to another moots claims for declaratory or injunctive relief against officials at the prior prison. *See, e.g., Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (injunctive relief moot because plaintiff transferred to different facility and no indication of "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"). As such, the Court is obliged

to deny Plaintiff's motion for a preliminary injunction and motion requesting immediate injunctive relief as moot.

## 5. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** First Amendment claim against Cushing, Kind, Radtke, and Carr for interfering with Plaintiff's right to communicate with others outside prison.

**Claim Two:** Sixth Amendment claim against Cushing, Kind, Radtke, and Carr for interfering with Plaintiff's right to counsel.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS ORDERED** that Plaintiff's second motion for leave to proceed without prepaying the filing fee, ECF No. 7, motion to waive the initial partial filing fee, ECF No. 12, motion for immediate injunctive relief, ECF No. 13, and motion to expedite, ECF No. 15, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 3, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction, ECF No. 4, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants GBCI Staff, GBCI, and Wisconsin Department of Corrections be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on **Defendants Cushing, Kind, Radtke, and Carr**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a further amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*,

Page 17 of 19
Case 2:22-cv-01192-JPS   Filed 08/02/23   Page 17 of 19   Document 17

No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $347.39 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 2nd day of August, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.